UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SUSAN KEITH,

                                        **Plaintiff,**

    vs.                                                         5:25-CV-778
                                                                    (MAD/MJK)

ORAZIO CRISALLI,

                                        **Defendant.**

_____

APPEARANCES:                                    OF COUNSEL:

SUSAN KEITH
P.O. Box 183
Clay, New York 13041
Plaintiff, *pro se*

MILBER MAKRIS PLOUSADIS                 PATRICK F. PALLADINO, ESQ.
& SEIDEN, LPP
1000 Woodbury Road – Suite 402
Woodbury, New York 11797
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 16, 2025, *pro se* Plaintiff Susan Keith filed a complaint naming Orazio Crisalli

and Erin Condon as Defendants and alleging violations of the Securities and Exchange Act of

1934 ("SEC"), New York's Deceptive Practice's Act, Racketeer Influenced and Corrupt

Organizations Act ("RICO"), and New York State contract, property, and tort laws for breach of

contract, a fair housing violation, breach of the warranty of habitability, constructive eviction,

retaliation, negligence, and intentional infliction of emotional distress ("IIED"). *See* Dkt. No. 1.

1

Plaintiff's allegations arise from her leasing an apartment, "'Clay Marketplace A Lifestyle Center' a non-smoking community" in Clay, New York (the "Property") owned by Defendant Crisalli. Defendant is a "co-owner of Syracuse Realty Group, LLC, the property management company for the subject premises, and co-owner and co-executive officer of QP2 Properties, LLC." *Id.* Plaintiff alleges she has suffered from "carcinogenic exposure" on the Property because of another resident and his guests smoking. *See generally* Dkt. No. 1. Plaintiff filed an emergency motion for injunctive relief, *see* Dkt. No. 2, which the Court denied. *See* Dkt. No. 8. Summonses were issued on Defendants Crisalli and Condon on June 17, 2025. *See* Dkt. No. 4.

On June 26, 2025, Plaintiff filed an amended complaint naming only Defendant Crisalli ("Defendant"). *See* Dkt. No. 13. Based on Plaintiff's request, a new summons was issued. *See* Dkt. Nos. 14, 15. On August 6, 2025, Plaintiff requested a Clerk's entry of default. *See* Dkt. No. 19. Default was entered the same day. *See* Dkt. No. 20. Plaintiff then filed various motions requesting injunctive relief. *See* Dkt. Nos. 21, 23, 24. Defendant appeared in the action on August 20, 2025. *See* Dkt. No. 27. On August 21, 2025, Plaintiff filed a motion for default judgment. *See* Dkt. No. 29. Defendant then filed a motion to dismiss Plaintiff's complaint. *See* Dkt. No. 37. Plaintiff responded in opposition, *see* Dkt. No. 40, and Defendant replied, *see* Dkt. No. 41. On March 2, 2026, the Court denied the default judgment motion. *See* Dkt. No. 57

Presently before the Court is Defendant's motion to dismiss. *See* Dkt. No. 37. For the following reasons, Defendant's motion is granted.

## II. BACKGROUND

The following facts are derived from Plaintiff's amended complaint. *See* Dkt. No. 13. Plaintiff Susan Keith resides at the Property. *Id.* at ¶ 1. Defendant Orazio Crisalli is a co-owner

of Syracuse Realty Group, LLC, the property management company for the Property, and co-owner and Managing Member of QP2 Properties, LLC. *See id.* at ¶ 116.

On December 20, 2024, Plaintiff entered into a lease agreement with QP2 Properties, LLC, for a unit on the Property. *See id*. at ¶ 123. Erin Condon was the property manager. *See id.* at ¶ 49. Plaintiff alleges the building was designed to be a non-smoking property. *See id.* at ¶ 123. Plaintiff spoke with a leasing agent, Justin Surlock, in October of 2024 and was assured that there was a no-smoking policy covering the entire building and patio, with this assurance re-affirmed in December of 2024. *See id.* On April 4, 2025, "secondhand carcinogenic fumes were infiltrating Plaintiff's unit on a regular basis." *See id.* at ¶ 125. Plaintiff first reported this by calling the management office and leaving a message. *See id.* Plaintiff was transferred to Defendant's voicemail. *See id.*

On April 30, 2025, Defendant Crisalli contacted Plaintiff to address her concerns. *See* Dkt No. 13 at ¶ 126. Plaintiff replied with her availability and contact information, but Plaintiff alleges that Defendant never scheduled the call. *See id.* Plaintiff then submitted a notice of vacating the Property, to which Defendant replied with approval. *Id*. at ¶ 127. Plaintiff alleges that on May 16, 2025, after seeing no "action" in response to the "smoking violations," Plaintiff submitted a legal notice seeking "compliance." *Id.* at ¶ 128. Plaintiff explains that after submission, the Property was cleared of all tobacco and smoke fumes. *See id*.

Plaintiff alleges that on May 18, 2025, she notified Defendant by text message of smoke again infiltrating her home but Defendant ignored her. *See id.* at ¶ 130. Plaintiff proceeded to call 911 due to feeling unwell. *See id*. Plaintiff texted Defendant, "Please address. The paramedics arrived and checked my vitals as I felt too dizzy but after being out they were able to wait for BP to stabilize. The smoking continued." *Id.* at ¶ 132. Defendant responded stating that

3

Defendant is the only person from the management company Plaintiff could contact from here-onwards, as Plaintiff had been "tying up the time of every employee in the company." *Id*. at ¶ 78. Defendant provided updates regarding Plaintiff's reported issues about her washer/dryer and other available units on the Property. *Id*. Defendant also noted "looking forward" to speaking with Plaintiff's attorneys after she had filed a legal notice. *Id*. Defendant sent Plaintiff another email acknowledging the filing of Plaintiff's lawsuit and clarified that Defendant would not be responding to or contacting Plaintiff upon advice from his attorney. *Id*. at ¶ 79.

Plaintiff alleges that Defendant had authorized a new resident to smoke on the Property. *See id*. "Plaintiff spoke directly with the explicitly smoking neighbor who revealed that Defendant had officially changed his lease agreement to permit smoking despite the property's non-smoking status." *Id*. at ¶ 133. Plaintiff does not allege that she has ever seen the neighbor's lease agreement. *See generally* Dkt. No. 13.

### III. DISCUSSION

**A.    Legal Standards**

Defendant has brought his motion to dismiss pursuant to the Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) motion tests the "legal sufficiency" of the pleader's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may

4

consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *see also Sutton ex rel. Rose v. Wachovia Sec., LLC*, 208 Fed. Appx. 27, 29-30 (2d Cir. 2006) (noting that at the motion to dismiss stage, a court may take judicial notice of documents filed in another court).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.* at 570.

This Court notes that although Defendant's motion references Rule 12(b)(6), he challenges Plaintiff's standing regarding the SEC and RICO claims. *See* Dkt. No. 37-4 at 3-9. "Although [the 2nd Circuit has] noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1)."

5

*All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006)

(quoting *Thompson v. County of Franklin*, 15 F.3d 245, 247 (2d Cir.1994)); *see also Rent*

*Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 & n. 2 (2d Cir.1993).

"Because the Court has an independent obligation to apply the correct legal standard[,]" it will

construe Defendant's motion to dismiss pursuant to Rule 12(b)(6) as one made under Rule

12(b)(1) for the purposes of evaluating the SEC and RICO claims.  *Platinum-Montaur Life Scis.*

*LLC v. Navidea Biopharmaceuticals, Inc.*, No. 17-CV-9591, 2018 WL 5650006, *5 (S.D.N.Y.

Oct. 31, 2018).

"At the pleading stage, 'the plaintiff must clearly allege facts [in her complaint]

demonstrating each element' of standing." *Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024)

(quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)).  "'If the plaintiff fails to do so, the

complaint is subject to dismissal at the outset either upon motion by the defendant under Federal

Rule of Civil Procedure 12(b)(1) or upon the court's own inquiry.'" *Id.* (quoting *Jones v. L.A.*

*Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)).

To survive a motion to dismiss pursuant to Rule 12(b)(1), the complaint's factual

allegations regarding standing must be "plausible" and "nonconclusory." *Iqbal,* 556 U.S. at 678,

680 (quoting *Twombly,* 550 U.S. at 570); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671

F.3d 140, 145 (2d Cir. 2011) (applying the pleading standards of *Twombly* and *Iqbal* to a Rule

12(b)(1) motion to dismiss).  The 2nd Circuit recently explained the standards applicable to a

Rule 12(b)(1) motion as follows:

> A Rule 12(b)(1) motion may be either facial or fact-based.  *See*
> *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).
> A facial motion is based solely on the pleadings—that is, the
> allegations of the complaint and any exhibits attached to it.  *Id.*  The
> district court must deny such a motion if the plaintiff satisfies the

applicable pleading standards discussed above. *Id.* Alternatively, in a fact-based motion, the defendant can proffer evidence outside the pleadings to challenge the plaintiff's allegations of standing. *Id.* at 57. "In opposition to such a motion, the plaintiff[ ] will need to come forward with evidence . . . controvert[ing] that presented by the defendant" if the defendant's evidence "reveal[s] the existence of factual problems" regarding standing. *Id.* (internal quotation marks omitted). In that scenario, "the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

*Lugo,* 114 F.4th at 87.

Courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss. *See Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This is because "the right of self-representation" obliges "the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (internal quotations and modifications omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id*. at 474.

**B.    Application**

### 1. SEC Violations

Plaintiff alleges that "Defendant made material misrepresentations to potential investors regarding property characteristics—specifically marketing and operating properties as non-smoking facilities while secretly authorizing smoking accommodations that violate the marketed specifications—with this discriminatory scheme designed to increase occupancy by targeting residents." Dkt. No. 13 at ¶ 148. Defendant argues that Plaintiff lacks standing to bring an SEC

claim because she is neither a purchaser nor a seller of a security.  *See* Dkt. No. 37-4 at 4.

Plaintiff responds that she does have standing to bring an SEC claim as she is a "victim whose

funds were misappropriated into fraudulent investment vehicles even where no actual securities

were purchased or sold."  Dkt. No. 40 at 8.

"To bring a claim under the Securities Exchange Act of 1934 [the "Act"], 15 U.S.C. § 78a

*et seq.*, a plaintiff must meet the requirement of statutory standing, which is a question of whether

a particular plaintiff 'has a cause of action under the statute.'"  *Aiello v. Brown*, No. 21-CV-0987,

2021 WL 5505107, *4 (2d Cir. Nov. 24, 2021) (summary order) (quoting *Am. Psychiatric Ass'n v.*

*Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016)).  Section 10(b) of 15 U.S.C. §

78j(b) makes it unlawful to use "any manipulative or deceptive device," "in connection with the

purchase or sale of any security," in contravention of the SEC's rules.  *Blue Chip Stamps v. Manor*

*Drug Stores*, 421 U.S. 723, 728 (1975).  "Private damage actions [are] limited to purchasers and

sellers of securities."  *Id.* at 731-732.  A claim under section 10(b) must sufficiently plead "'(1) a

material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between

the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the

misrepresentation or omission; (5) economic loss; and (6) loss causation.'"  *zCap Equity Fund*

*LLC v. LuxUrban Hotels Inc.*, 792 F. Supp. 3d 407, 430 (S.D.N.Y. 2025) (quoting *Matrixx*

*Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)).

The Act defines the terms "buy" and "purchase" as including "any contract to buy,

purchase, or otherwise acquire," 15 U.S.C. § 78c(a)(13), and the terms "sale" and "sell" as

including any contract to sell or otherwise dispose of."  *Id*. § 78c(a)(14).  The Act also has an

exhaustive list of terms that fall within the category of a "security."  *Id*. § 78c(a)(10).

The Court agrees with Defendant that Plaintiff lacks standing to bring an SEC claim based on alleged misstatements about her residential apartment building. *See* Dkt. No. 13 at ¶ 148. Plaintiff alleges misrepresentations were made about her residential building to investors of the building. *See id*. Yet, nothing in the complaint states Plaintiff is an investor or suffered harm from alleged misrepresentations. *See generally id.* The complaint does not otherwise include allegations that Plaintiff is a purchaser or seller of any securities. *See id.* Therefore, she does not fall within the class of plaintiffs who have standing to bring an SEC claim. *See Manor Drug Stores,* 421 U.S. at 731-732. Indeed, Plaintiff admits in her response that the *Blue Chip Stamps* case "presumes an actual securities transaction between identifiable buyers and sellers. Here, no such transaction occurred." Dkt. No. 40 at 5.

Plaintiff's only alleged commitment to the building is a lease agreement with her landlord, QP2 Properties, LLC, which is not a party to this action. *See* Dkt. No. 13 at ¶ 123. Her lease agreement is not with Defendant individually, which Plaintiff also admits in her response. *See id.*; *see also* Dkt. No. 40. at 6, 9. Regardless, a lease agreement does not fall within the definition of a "security." 15 U.S.C. § 78c(a)(10). As Plaintiff is neither a purchaser nor a seller of what the applicable statute characterizes as a security, Plaintiff does not have standing to bring a claim asserting a violation under section 10(b) of the Securities and Exchange Act of 1934. As a result, this claim is dismissed.

### 2. RICO Violation and Fraudulent Misrepresentation

Plaintiff alleges that "Defendant Crisalli conducted the affairs of an enterprise consisting of QP2 Properties, LLC and Syracuse Realty Group, LLC, through a pattern of racketeering activity . . . ." Dkt. No. 13 at ¶ 155. Plaintiff does not specify what the racketeering activity consisted of, or what financial harm or loss she suffered as a result. *See* Dkt. No. 13 at ¶ 154-160.

Defendant argues that Plaintiff fails to plead a RICO claim with required specificity or sufficiently explain the fraudulent nature of Defendant's conduct.  *See* Dkt. No. 37-4 at 6-8. Plaintiff responds that there were "false representations contained in" Defendant's "Form D [financial] filings" for the Property and that Defendant had an "intended objective of obtaining $1.3 million in taxpayer-funded credits."  Dkt. No. 40 at 10.

"The RICO statute grants standing to '[a]ny person injured in his business or property by reason of a violation of section 1962 . . . .' 18 U.S.C. § 1964(c)."  *Mackin v. Auberger*, 59 F. Supp. 3d 528, 557 (W.D.N.Y. 2014) (citing *Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001)).  "To allege standing, a plaintiff must plead, '(1) the defendant's violation of § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'"  *Id.*  "[E]motional distress is not cognizable under RICO because it does not constitute an injury to business or property."  *Pappas v. Passias*, 887 F. Supp. 465, 470 (E.D.N.Y. 1995).  "To plead a substantive civil RICO claim under 18 U.S.C. § 1962(c), 'a plaintiff must show that a person engaged in [i] conduct [ii] of an enterprise [iii] through a pattern [iv] of racketeering activity.'"  *Javino v. Denton*, No. 22-CV-01072, 2024 WL 4189005, *6 (E.D.N.Y. Sept. 13, 2024) (citing *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013)) (citations omitted).  "'Racketeering activity' is defined as 'any act which is indictable' under specified provisions of Title 18 of the United States Code, including mail fraud, wire fraud, and bank fraud."  *Wolhendler v. Goldberg*, No. 19-CV-457, 2020 WL 5658790, *3 (E.D.N.Y. Sept. 23, 2020) (citing 18 U.S.C. § 1961(1)(B)).

"Where . . . the alleged racketeering activity consists of mail fraud or wire fraud, the claim is subject to [Federal Rules of Civil Procedure] Rule 9(b)'s heightened pleading standard." *Lanzaro-Brunstein v. Creative Portal LLC*, No. 25-CV-5905, 2026 WL 1708236, *4 (S.D.N.Y.

June 12, 2026) (citing *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004)).  "Rule 9(b) requires a party alleging 'fraud or mistake' to 'state with particularity the circumstances constituting fraud or mistake.'"  *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 466 (S.D.N.Y. 2017) (quoting Fed. R. Civ. P. 9(b)).  "In order to satisfy this standard, a plaintiff asserting mail [or wire] fraud must identify 'the contents of the communications, who was involved, and where and when they took place, and explain why they were fraudulent.'"  *Id.* (quoting *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008)).  "Conclusory allegations of a conspiracy that 'rest on rank speculation' are insufficient to support a claim under RICO."  *Campos v. Lavinsky*, No. 22-CV-1278, 2022 WL 16950054, *3 (E.D.N.Y. Nov. 14, 2022) (quoting *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020)).  Furthermore, the injury or harm suffered must be "clear and definite."  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) (holding that there was no clear and definite injury where the extent of the plaintiff's damage was unknown); *see also Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 521 (S.D.N.Y. 1997) (stating that § 1964(c) "requires a showing of some actual, out-of-pocket financial loss").

Plaintiff lacks standing to bring a RICO claim.[1]  Plaintiff's complaint is devoid of any allegations of Plaintiff owning or running a business, any such business suffering a harm, or Plaintiff's property suffering a harm; which is required by statute.  *See generally* Dkt. No. 13*; see*

---

[1] The Local Rules of the Northern District of New York require that when a civil RICO claim is asserted before this Court, "the party asserting such a claim shall file a RICO statement within (30) days of the filing of the pleading containing such a claim." N.D.N.Y.L.R. 9.2.  Plaintiff commenced this action on June 16, 2025, but has failed to file a RICO statement.  Therefore, Plaintiff's RICO could be dismissed for this reason alone. *See Amaker v. Kelley*, No. 01-CV-877, 2009 WL 385413, *11 (N.D.N.Y. Feb. 9, 2009), *aff'd*, 399 Fed. Appx. 688 (2d Cir. 2010) (summary order); *Spoto v. Herkimer County Trust*, No. 99-CV-1476, 2000 WL 533293, *3 n.2 (N.D.N.Y. Apr. 27, 2000).  The RICO statement form is available at https://www.nynd.uscourts.gov/sites/nynd/files/general-ordes/GO14_0.pdf.

*also Auberger*, 59 F. Supp. 3d at 557. Although Plaintiff does allege that her lease payments are going towards a "fraudulent scheme" conducted by Defendant, *see* Dkt. No 13 at ¶ 157-158, this is conclusory and insufficient to establish standing to bring a RICO claim. *See Auberger*, 59 F. Supp. 3d at 557. Regarding the potentially fraudulent nature of Defendant's conduct and the materiality of misrepresentations, the Second Circuit has stated the following:

> Misrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution. Instead, the deceit must be coupled with a contemplated harm to the victim. Moreover, the harm contemplated must affect the very nature of the bargain itself. Such harm is apparent where there exists a "discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver."

*United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987) (citing *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970)).

Plaintiff has not set forth any allegations that would support a mail or wire fraud prosecution. Plaintiff references exposure to carcinogenic fumes as a suffered harm; however, Plaintiff's complaint does not allege any connection between alleged racketeering activity and Plaintiff's harm. *See id.* Although Plaintiff alleges that Defendant authorized a neighbor to smoke, she has not presented any legal authority demonstrating that such authorization itself constitutes "racketeering activity" under 18 U.S.C. § 1961(1). *See* Dkt. No. 13. "[A] plaintiff does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity." *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003); s*ee also Goldberg,* 2020 WL 5658790, at *3 (finding that the plaintiff had "not adequately [pled] proximate cause" given "[n]one of the fraud offenses alleged in the complaint victimized [the plaintiff] directly"). Here, there are also no allegations that Defendant's authorization, albeit not a

12

racketeering activity, targeted Plaintiff directly.  Plaintiff does not allege, beyond mere suspicion, any statements made by Defendant which would allow this Court to infer that Defendant directly targeted Plaintiff in authorizing smoking on the Property.  *See generally* Dkt. No. 13; *see also Knoll v. Schectman,* 275 Fed. Appx. 50, 51 (2d Cir. 2008) (summary order) (finding that "general descriptions of fraud" such as "[d]escribing a predicate fraud only as 'fraudulent accounting'" "is insufficient" and "the kind of conclusory allegations that Rule 9(b) is meant to dissuade").

As for the fraudulent misrepresentation claim, Plaintiff must allege, "(1) that the defendant made a material misrepresentation, with (2) scienter (i.e., the intent to defraud), and (3) that the plaintiff relied on the misrepresentation to her detriment (i.e., she suffered an injury proximately caused by the misrepresentation)."  *In re Amla Litigation*, 282 F. Supp. 3d 751, 759 (S.D.N.Y. 2017).  As with the RICO claim, a fraudulent misrepresentation claim must assert "with particularity the circumstances constituting fraud or mistake.'"  *Amoruso*, 232 F. Supp. 3d at 466 (quoting FED. R. CIV. P. 9(b)).  For the same reasons as those regarding dismissal of the RICO claim, Plaintiff's claim of fraudulent misrepresentation is insufficient.  The complaint fails to identify a material misrepresentation in the email exchanges with Defendant.  The parties' correspondence began with Plaintiff calling the management office to report smoking violations and then reporting via text message to Defendant directly.  *See* Dkt. No 13 at ¶ 125, 137-139. Defendant responded "[m]aintenance will investigate." *Id*. at ¶ 137.  Plaintiff texted Defendant, again, and he responded, "[t]hank you for reporting concerns.  We will investigate and address the issue with the appropriate parties." *Id.* at ¶ *138*.  Defendant then requested to schedule virtual call. *See id*. at ¶ 126.  After providing availability, Plaintiff received no response from Defendant and submitted a notice that she would vacate the Property, which Defendant replied to with approval. *See id*. at ¶ 127.  Plaintiff then submitted a legal notice for compliance and the Property

13

was free from fumes thereafter. *Id*. at ¶ 128. Plaintiff texted Defendant reporting that smoke was infiltrating her home and making her ill. *Id*. at ¶ 131. Defendant responded via email providing updates regarding Plaintiff's reported issues. *Id*. at ¶ 78. Defendant also noted "looking forward" to speaking with Plaintiff's attorneys after she'd filed a legal notice. *Id*. Defendant then sent Plaintiff another email acknowledging the filing of Plaintiff's lawsuit and clarified that Defendant would not be responding to or contacting Plaintiff upon advice from his attorney. *Id*. at ¶ 79.

Plaintiff does not provide any explanation as to how these email and text interactions are fraudulent or deceitful. Simply characterizing an act as "fraudulent" is insufficient and the exact type of conclusory allegation dissuaded by Rule 9(b). *See Knoll*, 275 Fed. Appx. at 51. Plaintiff's complaint also fails to allege Defendant's intent to defraud Plaintiff. "'Scienter may be established by alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" *Gomez v. Credit Suisse AG*, No. 23-CV-862, 2024 WL 506240, *1 (2d Cir. Feb. 9, 2024) (summary order) (citing *New Eng. Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 177 (2d Cir. 2023)). To show motive and opportunity, Plaintiff must allege that Defendant "'benefitted in some concrete and personal way from the purported fraud.'" *Tradeshift, Inc. v. Smucker Servs. Co.*, No. 20-CV-3661, 2021 WL 4463109, *6 (S.D.N.Y. Sep. 29, 2021) (noting that the plaintiff never explains how the defendant knew that the representations were false) (citing *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 72 (S.D.N.Y. 2010)). Here, Plaintiff fails to plausibly allege facts showing Defendant's motive or reasoning behind the purported fraud. *See generally* Dkt. No. 13. Without additional facts, Plaintiff's allegations remain conclusory, resting solely on speculation, and therefore are insufficient. Thus, the RICO and fraudulent misrepresentation claims are dismissed.

14

### *3. Fair Housing Violation*

Plaintiff alleges that Defendant "selectively enforc[ed] the property's non-smoking policy, authorizing smoking accommodations for certain residents while denying Plaintiff equal treatment under her lease agreement that guaranteed a smoke-free environment." Dkt. No. 13 at ¶ 298.  Plaintiff adds that Defendant's "selective policy enforcement" was "designed to target Plaintiff," and that Defendant's conduct demonstrated "discriminatory treatment based on Plaintiff's assertion of her habitability rights." *Id*. at ¶ 299.  Defendant argues that Plaintiff "fails to allege any act or omission by Defendant based upon any protected class," and that "the Amended Complaint does not even mention the term[] protected class" or any of the classes listed in the applicable statute.  Dkt. No. 37-4 at 18.

To state a fair housing violation, pursuant to 42 U.S.C. § 3604, Plaintiff must allege "discrimination in housing based on race, color, national origin, religion, sex, familial status, and disability." *Jones v. Homestate Asset Mgmt. LLC*, No. 6:23-CV-06507, 2024 WL 1856858, *3 (W.D.N.Y. Apr. 29, 2024).  "To establish a prima facie case of housing discrimination under the [Fair Housing Act], a plaintiff must show '(1) that they are members of a protected class; (2) that they sought and were qualified to rent or purchase the housing; (3) that they were rejected; and (4) that the housing opportunity remained available to other renters or purchasers.'" *Id*.  (citing *Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 617 (S.D.N.Y. 2011)).

Plaintiff has not alleged that she is a member of a protected class, nor does she allege that Defendant discriminated against her on the basis of her membership in a protected class.  *See generally* Dkt. No. 13.  While Plaintiff alleges discrimination based on her "habitability rights," this does not tie any disparate treatment to her race, color, religion, sex, familial status, national origin, or disability.  *See id*.

15

Plaintiff states in her response to the motion to dismiss that a neighbor smoking in her building caused her to suffer a disability by her being unable to breathe properly. *See* Dkt. No. 40 at 14. Plaintiff asserts that such a disability places her in a protected class. *See id.* "To demonstrate that [s]he is a member of that class, a plaintiff must show '(1) a physical or mental impairment which substantially limits one or more . . . major life activities; (2) a record of having such an impairment; or (3) that he or she is regarded as having such an impairment.'" *Ballentine v. Barak*, No. 25-CV-515, 2026 WL 1024116, *7 (S.D.N.Y. Feb. 13, 2026) (quoting *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015)); *see also* 42 U.S.C. § 3602(h). Plaintiff has not alleged that her "disability" limits any major life activities, that there is any official record of an impairment, or that anyone regards her as having an impairment. *See generally* Dkt. No. 13.

Further, although Plaintiff alleges in her response that Defendant was aware of her "disability," Dkt. No. 40 at 14, she fails to show that her disability "was at least a motivating factor with regard to [her] allegations of discrimination by Defendant." *Barak*, 2026 WL 1024116, at *7 (citing *Avila v. Acacia Network, Inc*, No. 1:24-CV-0884, 2024 WL 1659456, *4 (S.D.N.Y. April 15, 2024)); *see also Evans v. Bronxworks, Inc.*, 2025 WL 3469952, *8 (S.D.N.Y. Dec. 3, 2025) (finding that "at most, [the plaintiff] alleged that [the defendant] was aware of her [protected] status" but not that the defendant "treated [the plaintiff] differently than others on that basis"). As a result, Plaintiff has failed to state a fair housing claim, and this claim is dismissed.

### 4. Breach of Contract

Plaintiff alleges that she entered into a lease agreement with QP2 Properties, LLC, which is co-owned by Defendant. *See* Dkt. No. 13 at ¶ 123. Plaintiff explains, later in her Amended Complaint, that "Plaintiff and an agent for Defendant Crisalli entered into a valid and binding lease agreement." *Id*. at ¶ 186. Plaintiff emphasizes that this agreement "explicitly included and

16

incorporated the property's non-smoking policy as a material term of the tenancy." *Id*. at ¶ 186. Plaintiff also alleges that the property being "expressly marketed and advertised as a 'non-smoking' property'" "was a material inducement for Plaintiff to enter into the lease agreement" and "a material basis for Plaintiff's decision to sign [the] lease. *Id*. at ¶ 187-188.

In his motion to dismiss, Defendant argues that he "never entered into any contract with Plaintiff, has no privity with Plaintiff, and did not intend for Plaintiff to be a third-party beneficiary to any other contract." Dkt. No. 37-4 at 18. Defendant further contends that "[t]here is not a single allegation in the Amended Complaint of any contractual relationship between Plaintiff and Defendant." Dkt. No. 37-4 at 20.

"To state a claim for breach of contract under New York law, 'the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011)).

Although Plaintiff's allegations contradict each other regarding whether Plaintiff entered into a lease agreement with QP2 Properties, LLC, or with "an agent for Defendant Crisalli," neither allegation establishes a breach of contract claim. *See generally* Dkt. No. 13. Plaintiff has brought her breach of contract claim against Defendant and not the LLC which Defendant co-owns. *Id*. at ¶ 116, 185-198. This Court is guided by New York's Limited Liability Company law which provides as follows:

> Neither a member of a limited liability company, a manager of a limited liability company . . . nor an agent of a limited liability company . . . is liable for any debts, obligations or liabilities of the limited liability company or each other, whether arising in tort, contract or otherwise, solely by reason of being such member, manager or agent or acting (or omitting to act) in such capacities or

17

> participating . . . in the conduct of the business of the limited
> liability company.

N.Y. Ltd. Liab. Co. Law § 609(a).

As Plaintiff admits to entering into a lease agreement with the LLC rather than Defendant, the LLC had contractual obligations to Plaintiff, and Defendant is shielded from liability arising from any breach of these contractual obligations. *See Sigalit v. Kahlon*, 2023 LX 37365, at *9 (S.D.N.Y. Aug. 30, 2023) (citing *Grammas v. Lockwood Assocs., Ltd.*, 95 A.D.3d 1073, 1074 (N.Y. App. Div. 2012)) (cleaned up) ("A member of a limited liability company cannot be held liable for the company's obligations by virtue of his or her status as a member thereof"); *see also Value Time, Inc. v. Windsor Toys, Inc.*, 709 F. Supp. 436, 438 (S.D.N.Y. 1989) (holding that because the defendant was acting in his individual "capacity as an officer" of his corporation, he cannot be held "individually liable" for the corporation's alleged breach of contract); *Noel v. L & M Holding Corp.*, 35 A.D.3d 681, 682 (N.Y. App. Div. 2d Dep't 2006) (dismissing claims against the defendant finding that there was no evidence supporting that the defendant intended to be "personally bound" by the contract between the corporation and the plaintiff); *Haymount Urgent Care PC v. GoFund Advance, LLC,* 690 F. Supp. 3d 167, 181 (S.D.N.Y. 2023) (citation omitted) (finding that if an individual did not contract in his individual capacity with the plaintiff, he cannot be held individually liable for any breach of the contract).

Although not raised by the *pro se* Plaintiff, there is a well-known exception to this form of liability: "piercing the corporate veil." *Blum v. Spaha Capital Mgmt., LLC*, 44 F. Supp. 3d 482, 495-496 (S.D.N.Y. 2014). "'Because the breached contract for which plaintiffs seek damages was between plaintiffs and a corporate entity . . . [the individual defendants] will be liable only if the . . . corporate veil is pierced.'" *Id*. (quoting *Michaels v. Banks*, 901 F. Supp. 2d 354, 357 (N.D.N.Y.

18

2012)).  "Under New York law, a court may pierce the corporate veil where 1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and 2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil."  *Id*. (quoting *MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC*, 268 F.3d 58, 63 (2d Cir. 2001)) (internal quotation marks and citation omitted).

Even after a liberal reading of Plaintiff's complaint, she fails to allege that Defendant "exercised complete dominion" over the LLC in connection with the lease agreement or the specific issue of carcinogenic fumes.  *See generally* Dkt. No. 13.  Plaintiff names numerous other individuals she had correspondence with regarding this matter, such as Erin L. Condon (the property manager for the subject premises), and Justin Surlock (a leasing agent).  *See id*. at ¶ 188-189.  At most, Plaintiff alleges that Defendant "coordinat[ed] with other property management staff to avoid addressing the smoking violations;" however, this is a conclusory allegation.  Dkt. No. 13 at ¶ 194.  Plaintiff refers to "the leasing agent [failing] to respond to Plaintiff's emails about the issue and Condon's non-denial of the coordinat[ion]," yet these instances are not tied to Defendant's dominion or control of the LLC.  *Id*.  Plaintiff's allegations assume that these instances must have something to do with Defendant's conduct but there is no context or more specific allegations provided.  *See generally* Dkt. No. 13.  As for Defendant committing fraud, as previously discussed, Plaintiff fails to plead sufficient facts to allege such conduct.  Therefore, Plaintiff fails to allege facts that support piercing the corporate veil and the breach of contract claim is dismissed.

### 5. Real Property Law Violations

Plaintiff alleges Defendant breached the warranty of habitability, constructively evicted her, and retaliated against her in violation of New York Real Property Law § 223-b.  *See*

*generally* Dkt. No. 13 at ¶ 199-234, 248-266.  Defendant argues that "[f]or the statute to be applicable, the law requires a contractual agreement or a landlord-tenant relationship," which Defendant and Plaintiff lack.  S*ee* Dkt. No. 37-4 at 21 (quoting *MCarthy v. Board of Mgrs. of Bromley Condominium*, 271 A.D.2d 247 (1st Dep't 2000)).

> New York Property law requires as follows:
>
>> In every written or oral lease or rental agreement for residential premises *the landlord or lessor* shall be deemed to covenant and warrant that the premises so leased or rented and all areas used in connection therewith in common with other tenants or residents are fit for human habitation and for the uses reasonably intended by the parties and that the occupants of such premises shall not be subject to any conditions which would be dangerous, hazardous, or detrimental to their life, health or safety.

N.Y. Real Prop. Law § 223-b (emphasis added).  Similarly, as Defendant states, "a claim for constructive eviction can only be brought against one's landlord," and without the "necessary" element of this relationship, such a claim "will be dismissed."  Dkt. No. 37-4 at 22 (citing *905 5th Associates, Inc. V. 907 Corp.*, 47 A.D.3d 401, 403 (1st Dep't 2008)); *see also Barash v. Pa. Terminal Real Estate Corp.*, 26 N.Y.2d 77 (1990).  Also, a claim of retaliation concerns "landlord[s] of premises or units" as the individuals the statute is applicable to.  *See* Dkt. No. 37-4 at 22 (citing *Fiondella v. 345 West 70th Tenants Corp.*, 217 A.D.3d 495 (1st Dep't 2023)); *see also* RPL 223-b(1); RPL 223-b(2).

Plaintiff fails to allege facts supporting a landlord-tenant relationship between herself and Defendant.  *See Stern v. Syracuse Mall Assocs.*, No. 96-CV-297, 1998 WL 52022, *2 (N.D.N.Y Feb. 4, 1998) (explaining three theories for a landlord-tenant relationship).  Plaintiff does not allege that she and Defendant have "privity of contract" because Defendant "must be a signatory to the lease agreement or have somehow contracted to assume the rights, duties and obligations of

20

the landlord in a separate document." *Id.*  She does not allege "privity of estate," which is where there is "a continuous succession of conveyances between the original covenantor and the party now sought to be burdened." *Id*.  Finally, she fails to allege that Defendant is a "mortgagee in possession." *Id.*  "The key to imposing liability under the mortgagee in possession theory is possession and control." *Id.*  As previously discussed, Plaintiff does not sufficiently allege that Defendant exercised complete dominion or control over the Property.  *See generally* Dkt. No. 13.

Therefore, Plaintiff has not stated a landlord-tenant relationship.  Without this, she cannot claim that Defendant owes her the warranty of habitability for her residential unit, nor can she sustain constructive eviction and retaliation claims against Defendant.  S*ee* Dkt. No. 37-4 at 21-22; s*ee also MCarthy*, 271 A.D.2d at 247; *905 5th Associates, Inc*., 47 A.D.3d at 403; *Barash*, 26 N.Y.2d at 77; *Fiondella*, 217 A.D.3d at 495.  Thus, Plaintiff's claims are dismissed.

### 6. Intentional Infliction of Emotional Distress

Plaintiff's claim of IIED arises from a neighbor smoking on the Property.  *See* Dkt. No. 13 at ¶ 267-282.  Plaintiff alleges Defendant authorized the smoking and Plaintiff continued to be exposed to carcinogenic fumes.  *Id*. at ¶ 269.  Defendant argues that "Plaintiff failed to identify any extreme or outrageous conducted directed towards Plaintiff at all."  *See* Dkt. No. 37-4 at 25.  Defendant contends that "the Amended Complaint is devoid of any fact based allegations of an intent to cause . . . severe emotional distress."  *Id*.

A plaintiff claiming intentional infliction of emotional distress must allege four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993)).  The first element sets a high bar to relief, requiring "extreme and outrageous conduct,

21

which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (internal quotation marks omitted).  The conduct must involve "a deliberate and malicious campaign of harassment or intimidation."  *Blanco v. Success Acad. Charter Sch., Inc.*, 722 F. Supp. 3d 187, 217 (S.D.N.Y. 2024).  Isolated conduct, even if objectionable or harmful, may not rise to this level.  *Id.* at 220-221.

The Court finds that Defendant authorizing smoking on the Property does not constitute extreme or outrageous conduct.  "In New York, the tort of intentional infliction of emotional distress is extremely disfavored."  *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 488 (S.D.N.Y. 2013) (citing *Hogan v. J.P. Morgan Chase Bank*, No. 05-CV-5342, 2008 WL 4185875, *4 (E.D.N.Y. Sept. 4, 2008)).

> Only the most egregious conduct has been found sufficiently extreme and outrageous to establish this tort . . . *Doe v. Cmty. Health Plan-Kaiser Corp.*, 268 A.D.2d 183 (3d Dep't 2000) (disclosure of plaintiff's medical records by medical corporation not sufficiently extreme and outrageous).

*Medcalf*, 938 F. Supp. 2d at 488-489.

Defendant's conduct does not meet the high bar of what constitutes extreme and outrageous conduct.  Plaintiff has also not alleged that Defendant intended to inflict emotional distress on her.  *See generally* Dkt. No. 13.  The only interactions between the two parties consist of a few email and text exchanges in which Plaintiff characterizes Defendant's response as "hostile and retaliatory communication designed to maximize emotional harm."  Dkt. No. 13 at ¶ 276.  However, this is only a characterization of the response—the actual substance of the responses consist of updates about Plaintiff's prior inquiries and Defendant stating Plaintiff was "tying up the time of every employee in the company."  *Id.* at ¶ 78.  These "are the sorts of

quotidian negative commentary exchanged in countless daily conversations in our free society." *Medcalf*, 938 F. Supp. 2d at 489.  Plaintiff has not alleged anything objectively crude or otherwise emotionally distressing.  *See id*.; *see generally* Dkt. No. 13.

As a result, Plaintiff has failed to state an IIED claim, and this claim is dismissed.

### 7. Negligence

Plaintiff alleges that Defendant failed to sufficiently enforce the non-smoking policy at the Property and she lists measures that Defendant should have taken to remedy the situation.  *See* Dkt. No. 13 at ¶ 237.  The grievance arises from Defendant failing to prevent the smoking.  *See generally* Dkt. No. 13.  Defendant argues that he did not owe Plaintiff a duty and that "Plaintiff is not in privity with Defendant" therefore, "Defendant may not be found liable to Plaintiff for negligence."  Dkt. No. 37-4 at 17-18.

To state a negligence claim, Plaintiff must allege: "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."  *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002) (citations omitted).  "The general rule is that an officer of a corporation who participates in the commission of a tort by the corporation is personally liable therefore."  *Anchor v. Diaz Intermediates Corp.*, No. 04-CV-0300S, 2011 WL 13213549, *17 (W.D.N.Y. Mar. 14, 2011) (citing *Clark v. Pine Hill Homes, Inc.*, 112 A.D.2d 755, 755 (4th Dep't 1985)).  "However, a corporate officer is not held liable for the negligence of the corporation merely because of his official relationship to it.  It must be shown that the officer was a participant in the wrongful conduct."  *Id*.  "This 'commission of a tort' doctrine permits personal liability to be imposed on a corporate officer for misfeasance or malfeasance, *i.e.,* an affirmative tortious act, but does not permit personal liability for

23

nonfeasance, *i.e.*, a failure to act." *Id.* (citing *Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 559 (1st Dep't 2009)).

> As a general rule, an out-of-possession landlord is not responsible for dangerous conditions existing upon leased premises after possession of the premises has been transferred to the tenant. Exceptions to this rule include situations where the landlord retains control of the premises, has specifically contracted to repair or maintain the property, has through a course of conduct assumed a responsibility to maintain or repair the property or has affirmatively created a dangerous condition.

*Pomeroy v. Gelber*, 117 A.D.3d 1161, 1162 (2014); *see also Harkins v. Tuma*, 182 A.D.3d 678, 679 (2020); *Balash v. Melrod*, 167 A.D.3d 1442, 1442 (2018).

This "creates a duty on the part of the landlord to protect persons on said portions of their land from unreasonable hazards." *Stickles v. Fuller*, 2 Misc.3d 954, 956 (2004). However, a plaintiff must first allege that the defendant had "'actual or constructive notice [of the dangerous condition] and a reasonable opportunity to repair [or remedy] the dangerous condition.'" *Pomeroy*, 117 A.D.3d at 1162 (citing *Oates v. Iacovelli*, 80 A.D.3d 1059, 1060 (2011)).

Plaintiff provides text messages of her reporting her grievance to Defendant and Defendant responding, "We will investigate and address the issue with the appropriate parties." Dkt. No. 13 at ¶ 113. After Plaintiff's follow-up, Defendant stated, "We understand your concerns regarding smoking. We are wondering if you are available for a sit-down meeting with ownership and management to discuss the ongoing situation on Wednesday late morning time?" *Id*. Plaintiff's response included her being "unsure of [her] schedule" and stated she could "do a conference call." *Id*. Plaintiff expressed disfavor for an in-person meeting. *See id*. A day later, Defendant responded asking Plaintiff to "let us know your availability as soon as you can, we look forward to meeting in person." *Id*. Plaintiff responded asking Defendant to "address the

ongoing smoking violations as this doesn't [require immediately meeting] with [her]." *Id*. The reported text interactions do not include Plaintiff ever providing her availability for a meeting. *Id*. On April 30, 2026, Defendant stated "I am one of the two owners at [the Property] . . . My business partner [] and I are aware of the ongoing issues you have at your apartment and would like to suggest a virtual call to address your concerns. Please reply with some times that you are available and we will schedule the call accordingly." *Id*. at ¶ 78. Plaintiff alleges responding immediately with availability but receiving no further response on the matter of a call. *Id*. at ¶ 126.

These texts interactions demonstrate that Defendant had actual notice of a condition that Plaintiff considered to be dangerous; in this case, the smoke fumes. *See generally id*. Defendant received Plaintiff's reports and responded numerous times. Plaintiff also gave Defendant a reasonable opportunity to remedy the condition. Plaintiff first reported her grievance with the smoke fumes on April 4, 2025, and decided to file a legal notice seeking "compliance" on May 16, 2025. Dkt. No. 13 at ¶ 125, 128. Plaintiff allowed over a month's time to pass before taking formal action, and during this month, she continued experiencing discomfort. *See id.; see also Bartholomee v. Casey*, 651 A.2d 908, 920 (1994) (remanding the case because a jury could find that the defendant "did not abate [the hazard] quickly enough" when he had known of it for a month).

"A dangerous condition is one that is unsafe or hazardous, creating the potential for injury-causing accidents to occur." *Matzkow v. United New York Sandy Hook Pilots Ass'n*, No. 18-CV-2200, 2022 WL 79725, *12 (E.D.N.Y. Jan. 7, 2022) (citation omitted). However, "[n]ot every property condition on which persons can hurt themselves is unreasonably dangerous or hazardous." *Robertson v. Cousins Wholesale Produce, Inc.*, No. A-0515-08T2, 2010 WL

25

2867928, *3 (N.J. Super. Ct. App. Div. July 20, 2010). The smoke fumes could be considered unreasonably dangerous if they were "a significant structural or design defect in violation of a specific statute." *King v. Hahn*, 993 F. Supp. 212, 215 (S.D.N.Y. 1998). Plaintiff does not allege any statutory violations arising from smoke fumes on the Property nor does she identify smoke fumes relating to any structural or design defects. *See generally* Dkt. No. 13. Although Plaintiff alleges feeling unwell on one occasion due to inhaling smoke fumes to the point of needing medical attention, *see* Dkt. No. 13 at ¶ 130-132, her complaint fails to allege a correlating statute protecting her from harm resulting from such conduct.

Further, a condition is generally not unreasonably dangerous or hazardous if the condition was open and obvious and not inherently dangerous. *See Borley v. United States*, 22 F.4th 75, 81-82 (2d Cir. 2021). "[W]hether a condition is open and obvious is generally a jury question . . . a court should only determine that a risk was open and obvious as a matter of law when the facts compel such a conclusion." *Reynolds v. AMTRAK*, 751 F. Supp. 3d 311, 322 (S.D.N.Y. 2024) (citing *Borley*, 22 F.4th at 81) (citations omitted). "'For a condition to be open and obvious as a matter of law, it must be one that could not be overlooked by any observer reasonably using his or her ordinary senses.'" *Id*. (citing *Garrido v. City of New York*, 9 A.D.3d 267, 268 (2004)). "Whether a condition is not inherently dangerous is also 'a highly fact-specific question, and hence usually one for the jury.'" *Id.* (citing *Borley*, 22 F.4th at 81). Plaintiff's complaint does not allege whether the smoke fumes should be considered inherently dangerous nor does she allege them to be a hidden hazard. *See generally* Dkt. No. 13. If a person would "take reasonable care without further warnings, and if the condition is plainly visible . . ., then the condition is not unreasonably dangerous." *Robertson*, 2010 WL 2867928, at *3. Plaintiff has not sufficiently

26

pled the smoke fumes coming from one neighbor and his guest(s), somewhere on the property, to be an unreasonably dangerous condition.

However, it is plausible that Defendant assumed the responsibility to maintain or repair the allegedly dangerous condition through his course of conduct. Plaintiff's complaint alleges that Defendant made assurances of "investigat[ing] and address[ing] the issue," which gives rise to the inference that he'd assumed responsibility of handling the matter. Dkt. No. 13 at ¶ 113. Defendant also made efforts to schedule a call with Plaintiff, in-person and virtually. *See id*. at ¶ 113, 126. This appears to demonstrate that Defendant had taken on a responsibility to address the purported dangerous condition. *See Cherubini v. Testa*, 130 A.D.2d 380, 382 (1987) ("Control of the premises may be established by proof of the landlord's promise, either written or otherwise, to keep certain premises in repair") (citing *Putnam v. Stout*, 38 N.Y.2d 607, 616-617 (1976)); *see also Moreno v. 105 Lombardy NY, LLC*, 248 A.D.3d 778, 779 (2026) (declining to grant the defendant judgment as a matter of law because the defendant's partner "was present on the premises every day" and "was involved . . . in addressing hazardous conditions at the premises"). Regardless, Plaintiff has failed to sufficiently allege causation.

> The causation element "incorporates at least two separate but related concepts: cause-in-fact and proximate cause. Cause-in-fact refers to those antecedent events, acts or omissions, which have so far contributed to the result that without them it would not have occurred . . . . Proximate cause serves to limit, for legal or policy reason, the responsibility of an actor for the consequences of his conduct."

*Wimbledon Fin. Master Fund LTD v. Miller*, 678 F. Supp. 3d 417, 427 (S.D.N.Y. 2023) (citing

*Aegis Ins. Servs. Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 178 (2d Cir. 2013)).

Plaintiff has not alleged facts demonstrating that Defendant's conduct was the cause-in-fact of her alleged injury. The first time Plaintiff provided her availability to speak with

27

Defendant was April 30, 2025—twenty-six days from when her complaints began. *See id*. at ¶ 126. Accordingly, Defendant's delay in addressing the concern cannot solely be attributed to his own conduct. Plaintiff does not allege what prevented her from providing her availability for twenty-six days, nor does she explain why she refused to meet with Defendant in-person. *See generally id*. Therefore, Plaintiff has not sufficiently pled that a delay in abating the alleged unreasonable hazard was caused by Defendant's conduct. "A defendant's conduct is 'not a cause-in-fact of an injury or loss if the injury or loss would have occurred regardless of the conduct.'" *See Miller*, 678 F. Supp. 3d at 427 (citation omitted).

Plaintiff's allegations do not suggest that smoking on the Property only occurred after Defendant intervened in any way. *See generally* Dkt. No. 13. It is not evident that Defendant's authorization made a difference in the conduct or caused it to continue, or whether the neighbor would have continued smoking regardless. *See Miller*, 678 F. Supp. 3d at 427. Plaintiff has not alleged that the neighbor made any statements that the smoking was motivated by Defendant's authorization. *See generally* Dkt. No. 13. Therefore, Plaintiff has failed to allege that Defendant's conduct was the actual and proximate cause of her harm and the negligence claim is dismissed.[2]

## C.    Leave to Amend

"A *pro se* complaint is to be read liberally . . . and the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication

---

[2] Independently, the Court could also dismiss Plaintiff's state law claims by declining to exercise supplemental jurisdiction because she has failed to establish standing on any of her federal claims. *See Klein & Co. Futures v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims").

that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  On the other hand, "leave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 Fed. Appx. 47, 49 (2d Cir. 2013) (summary order) (citation omitted).  Thus, leave to amend must be denied "where it is clear that no amendments can cure the pleading deficiencies." *Penird v. Better*, No. 5:19-CV-1146, 2021 WL 3077853, *6 (N.D.N.Y. July 21, 2021) (citing *Harrison v. New York*, 95 F. Supp. 3d 293, 305 (E.D.N.Y. 2015)); *see Vosburgh v. Burnt Hills-Ballston Lake Cent. Sch. Dist.*, No. 1:18-CV-1003, 2019 WL 315054, *11 (N.D.N.Y. Jan. 24, 2019), *aff'd sub nom. McHerron v. Burnt Hills-Ballston Lake Cent. Sch. Dist.*, 778 Fed. Appx. 54 (2d Cir. 2019) (summary order) ("An amendment of a pleading is considered 'futile' when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure") (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Plaintiff has not requested leave to amend, but in light of Plaintiff's *pro se* status, the Court has considered whether an opportunity to amend would be prudent.  In this case, it is unlikely that an opportunity to amend will remedy the deficiencies in Plaintiff's complaint.  Plaintiff has already once amended her complaint.  *See* Dkt. Nos. 1, 13.  Her amended complaint fails to establish standing or sufficiently plead any of her claims and Plaintiff has not raised anything in her response to the motion to dismiss which demonstrates a likelihood that another chance to amend would cure the deficiencies set forth herein.  Even liberally reading the complaint, the Court does not find any indication that a valid claim might be stated.  Therefore, the Court will not grant leave to amend.

29

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 37) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's amended complaint (Dkt. No. 13) is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 12, 2026
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge